Good morning. Thank you, Your Honors. I'd like to reserve two minutes for rebuttal. Okay. Please watch the clock, and I'll also try and watch it for you. Thank you. May it please the Court. The government carries a heavy burden of proof in a denaturalization proceeding. Given the severe and unsettling consequences that accompany the loss of American citizenship, the evidence justifying revocation must be clear, unequivocal, and convincing. Thus, as this Court said in Arango, summary judgment for the government in a denaturalization is warranted only in narrow circumstances. This is not one of those circumstances. At the time of the key events in this case, Ms. Yetisen was just 20 years old. She had fled her village after losing family members to violence from invading Serbian forces and joined the Bosnian military in an effort to survive. She was the only woman in her unit and was sexually assaulted by her fellow soldiers. Then, one of the men who had attacked her ordered her to participate in the events that the government now relies on to support its request for denaturalization here. Now, more than two decades after becoming naturalized, Ms. Yetisen stands to lose the priceless benefits that come with American citizenship. But on this record, the government cannot meet its burden of demonstrating that there is no genuine issue of material fact as to whether clear, unequivocal, and convincing evidence supports denaturalization. In ruling for the government below, the District Court made impermissible credibility determinations, resolved key disputes of fact against Ms. Yetisen, and relied on inadmissible expert testimony to inform its unsupported conclusions regarding Ms. Yetisen's mental state more than 30 years ago. Counsel, let me go ahead and ask you about that expert testimony. So, if we were to agree with you and say, you know what, it's clear under our Ninth Circuit case law that trial court must make reliability findings under Federal Rule of Evidence 702, can't we still find that it was harmless given the fact that Ms. Yetisen testified that a guy told, when she was in that, I'm going to mispronounce it, Zulfiqar? Zulfiqar is my understanding. Okay. That she testified when she was part of the Zulfiqar unit that they were told, these are the houses you want to shoot at or deal with or whatever because they're not Muslim and, but, you know, don't hurt the Muslim folks on that part of town. So there's testimony there from her. She also testified that she actively participated in the massacre, although, you know, she knows she shot the gun. She doesn't know if it hit anybody. So is the expert's testimony, although correct, you know, if we find that you're correct, that they did, the court failed to make a reliability finding, isn't it harmless error given all of the other supporting evidence? Without the expert testimony, there is a dispute of fact. She also testified that she was unaware of the nationality or religion of the residents of Trusina at the time of the attack, that the unit commanders did not instruct them regarding nationality or religion and that her instructions were simply to take the area. And regardless of whether this court disagrees with us on whether there was persecution, there still is a question of whether she offered purposeful assistance to that persecution. And Miranda Alvarado counsels that there's the question of whether there was personal involvement and whether there's purposeful assistance. And those are two separate questions. And we think without the expert report, there is certainly a dispute of fact on the purposeful assistance point. So talk to me about that case, because that's the one, if I remember correctly, where it was the interpreter, correct? Yes. Okay. So how is this different? Because this feels like it's more, you know, firing a gun feels like it's more purposeful, more, you know, the greater chance of persecution there than interpretation. So I think that the question of whether Missy Edison's personal involvement in any persecution that did occur was greater is the question that I think goes to the interpretation versus the shooting. The question of the extenuating circumstances, which is the purposeful assistance inquiry, I think that in this case, she has the factors that the court considered in Miranda Alvarado. I think she has a stronger case on that. The interpreter in Miranda Alvarado was offering assistance for six years. He was participating in two to three times a month during that period. Here we have the government has alleged one incident that she was a part of on one day. The government, the Miranda Alvarado also discusses about whether there was a fear of safety and an opportunity to avoid participation. And again, in this case, she has offered testimony that she was ordered to participate in this by the person who had previously attacked her. She was in shock. And again, it's this one circumstance where she did not feel like she could get herself out of that situation because of these extreme extenuating circumstances. I want to go back for a minute to the expert, because while Rule 702, of course, requires that an expert have used a reliable methodology, I'm not sure what that means when it comes to a historian. I think that looking at this Court's case law and how other courts have treated that, I think, is instructive. So I'd point the Court to in the Second Circuit in Marvel Characters where reviewing the sources is permissible, but relying on hearsay testimony to reach conclusions regarding the mental state of specific individuals at a specific point in time is impermissible. And I think that is where Dr. Tomlanovich, his testimony goes beyond what is permissible here. So you're not challenging the reliability of his historical account, but only what he inferred then about your client's motivation? I think that we're challenging, to be admissible, the testimony must be both relevant and reliable. And so we do not challenge the reliability about Dr. Tomlanovich's testimony regarding the Ottoman Empire or the assassination of Archduke Ferdinand and Sarajevo, but those aren't the key questions in this case that are relevant to the determination. And on those key issues, he does not have the experience or did the work to offer reliable testimony on those points. But I'm still not totally clear. So because the jury is probably not going to have personal knowledge of all the complexities that went into the various conflicts in Bosnia and Croatia and so forth during the relevant time period, it's appropriate, is it not, to have an expert? I think that there is an expert question. I think that's a yes or no question. Yes. I think that there are portions of Dr. Tomlanovich's report that are as helpful to understand the conflict. And you're not challenging, or are you, the reliability of his account of what occurred leading up to those various conflicts? We are not challenging his account, his historical account, but I think that that doesn't speak to the key questions. So the only aspect of his testimony that you're challenging is what he inferred was then the motive, might have been the motivation of your client to commit the crimes that she's allegedly committed. Do I have that right? I think that we are challenging his testimony in particular, the reliability of his testimony regarding the motivations of Ms. Yedison and what she knew and what was in her head during the attack. I just wanted to clarify, that's all you're challenging? That is the central part of his testimony. Go ahead. And I think that that gets into the key question, kind of what you're getting at here, is that these disputes of fact regard Ms. Yedison's mental state at various points in time, and the district court is making improper credibility determinations in granting summary judgment in favor of the government. I guess I just still would like to know what your strongest case is or whether you have any cases that support the proposition that psychological hardship or trauma sort of can constitute such extenuating circumstances that they amount to coercion, that they amount to her not really having a choice but to participate here. I think that I would point the court towards Miranda Alvarado and Fedorenko and the discussion of this being a difficult line drawing question, where it's a continuum of conduct and the circumstances that any individual is experiencing, particularly in these civil strife type of conflicts. What part of Miranda Alvarado tells us that sort of psychological trauma can amount to coercion in the way that you're arguing? I mean, what part of that case says that? I don't read it that way myself. I think that the idea that extenuating circumstances, I think, must have meaning and must be given the opportunity for her to present this testimony, that she was not acting in a — she was not freely acting and freely offering her purposeful assistance to persecution in this situation, and I think that that's a credibility determination that the district court should hear live testimony and then only at that point be able to decide whether they believe her account. Counsel, did she not voluntarily join the Zulfiqar unit? She did voluntarily join the Zulfiqar unit. And her explanation is that it was because she was trying to find food and other kind of amenities at this time of war that was very difficult for her. Can I take you back to the participation for the persecutor bar? Can we make anything of her having pled guilty for purposes of determining whether or not she participated in the crimes? The Bosnian verdict does not include any finding regarding to persecutory motive, religion, nationality, those topics. And so I think that verdict is relevant to the question whether she had personal involvement, but it doesn't speak to purposeful assistance. And so that precise legal question is before the court here. The Bosnian verdict does not inform that inquiry. So the key word is purposeful, right? Yes. That's where you're focusing. And putting aside for the sake of argument, the case law. Normally, that means that you made a, it's like the equivalent of specific intent. You made a decision, conscious decision to do X. You knew what you were doing and you did it for the purpose of achieving some result. So how, and what you seem to be arguing is not challenging that, but challenging her motivation. And normally motivation is, goes to sentencing, so to speak, but is not relevant to the essential elements. So this is a more abstract discussion, but I'm not quite sure why motivation is relevant here. I think that this is a specific context that is different from kind of the criminal sentencing context. And I think here, where the way that this inquiry is set up, I think Vukmirovic speaks to this, of the fact that in these complex civil strife scenarios, individuals are faced with very difficult choices. And the idea that she might not be explicitly acting in self-defense doesn't mean there are not other similar extenuating circumstances. That means that, yes, she may have intentionally pulled the trigger on that day, but that doesn't mean that she was purposefully offering her assistance to any acts of persecution that did occur. Counsel, let me ask you this. Is there any evidence that shows that the Zulfiqar unit did not target, I don't know how to pronounce that, is it Croats, Croats?  Croats, thank you. Or others specifically because of their religion or ethnicity? Ms. Yedison, again, offered her testimony that they were not instructed to target them. Our position is that the evidence in the record is circumstantial and that that's a dispute of fact that should go before the fact finder. Do you have any other questions right now? I think, okay, would you like to reserve the remainder of your time?  Okay, we'll give you two minutes, 30 seconds for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Devin Barrett for the United States. Your Honor, as a threshold matter, the United States prevails here unless this Court reverses the District Court's grant of summary judgment on all four counts in this case. And this Court can find in the record supports that Ms. Yedison misrepresented and omitted material facts on both her refugee and her naturalization applications and did not provide truthful answers during her naturalization interview. Ms. Barrett, can I direct you to talking to us about the expert testimony? If we were to agree with your friend on the other side that, you know, the expert report should be inadmissible, does the government still mean it's a high, clear, and convincing evidence bar for denaturalization if the expert testimony is barred? Yes, it does, Your Honor. How? This Court can find, based on at least two of the misrepresentations that Ms. Yedison made on her refugee and naturalization applications, that she is not eligible for naturalization. The first fact is that she stated that she didn't commit a crime of moral turpitude on her refugee application. And then on her naturalization application, she states that she has never committed a crime for which she has not been arrested. The second omission was that on her refugee application, she never states her involvement in the Zulfiqar unit. She only lists one unit that she was involved in where the record demonstrates that she was involved in multiple military units while a member of the Bosnian army. And then on her naturalization application, she writes none under military service. So those facts in and of themselves are indicative of fraud. She made two different misrepresentations on two different applications. So that lack of consistency among the applications is fraud in and of itself. And there's no intent requirement, is there? The misrepresentations have to be willful, which just means they have to be deliberate and voluntary. And the record demonstrates that that is here. Ms. Yedison had knowledge of the falsity of her statements when she made them on both her refugee and naturalization applications. When she wrote none under military service, she knew that that was not correct. She had served in the Bosnian army. Your Honors, I would like to turn to the point that was discussed during my colleague's argument about Ms. Yedison's subjective motivations. To be clear, her subjective intent does not matter. She doesn't need to share in the persecutory motive of the Zulfiqar unit here in order for this court to find that she assisted or participated in persecution. Dr. Tomjanovich's report aids the court in determining that what the Zulfiqar unit was doing was persecution on account of a protected ground here, ethnicity and religion. All we need to show and what the record demonstrates is that Ms. Yedison knew that what her unit was doing was persecution and that her acts assisted in the furtherance of that persecution. Do we need to take into account that, as your friend on the other side said, she was suffering from PTSD, she was in shock, she had been previously sexually assaulted, all of that? Do we even take that into account? This Court can take that into account, Your Honor, but under a matter of negusi, duress isn't a defense to the persecutor bar, and Ms. Yedison is subject to the persecutor bar here. This Court in De Leon-Vasquez said that both under either test for assistance or participation in persecution, whether it is a matter of DR or Miranda-Alvarado, that duress is not a defense to the persecutor bar. So even if the district court got the finding of fact wrong that Ms. Yedison had not suffered duress or any extenuating circumstances, it wouldn't matter because she would still be subject to the persecutor bar in this case. Your Honor, with respect to Dr. Tomjanovich's report, the district court didn't abuse its discretion in admitting that testimony. The court made an explicit reliability finding in its report, and while it doesn't use any magic words, which the Supreme Court doesn't require, the substance of the finding is there. He says that Dr. Tomjanovich is qualified as an expert on the Bosnian War and the Yugoslav War, and that his report was helpful in determining the motivations of the Sofikar unit on the day of the Trusina massacre. I would also like to turn to a point about, that my colleague raised as well, about the court making improper credibility findings towards Ms. Yedison. That's not what the district court did here. The district court said that what Ms. Yedison was claiming was implausible, and that is just on its face. The Supreme Court in Matrusita has determined that if the non-moving party's claim as to the existence of a material fact is implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. Ms. Yedison hasn't done that here, and the district court found, and this court should affirm, that what Ms. Yedison is claiming is implausible on its face. It is implausible for anyone to believe that she didn't know that shooting at six unarmed civilians and prisoners of war was a crime when she answered the questions on her refugee and naturalization applications. Counsel, I'd like to ask you the same question I asked your colleague on the other side. What can we make of Ms. Yedison's guilty plea? Yes, Your Honor. So, as my colleague said, the verdict in the criminal court in Bosnia did not make any findings with respect to persecution of civilians. But Ms. Yedison's testimony in both her own guilty plea and then also in her testimony as a witness in a co-conspirator's case demonstrate that she was aware of the persecution that the Zofikar unit was engaging in on that day. They were told specifically before they even entered the village on that day that these houses on this side of the street are the Muslim Bosniak houses, and these houses on the other side of the street are the Bosnian Croat houses. These are the houses that you should shoot at, meaning the Bosnian Croat houses. So it was clear even from before they went into the village that the mission was to eradicate the Croats in that village. There's no reasonable person could sit here and find that that was not on account of ethnicity and religion. Your Honor, I'd also like to turn to the issues of latches that we raised before this  Our argument is that the court doesn't need to reach the issue of latches as they're categorically unavailable in civil denaturalization cases. But even if it did reach the issue of latches here, Ms. Yedison hasn't met her burden to demonstrate that latches should apply. She concedes in her deposition that she was not prejudiced by the government's or she wouldn't have done anything differently had this case, had she known that this case would have been brought earlier. And so she cannot be prejudiced by her own admission. With respect to categorical unavailability, we recognize that this court hasn't held that latches are categorically unavailable in civil denaturalization cases. But the Sixth Circuit and the Eighth Circuit have held that that is so. And we would urge this court to join those two circuits in making that determination. The reasons for that are that this is a case where the sovereign is bringing the suit, and latches do not run against the sovereign. That precedent goes back to Pangilinan, Federanco, and Dicta in U.S. v. Costello. Another reason is that naturalization is not a traditional or inherent equity power of the courts, which is why this court would not be able or the district court would not be able to apply the principle of equity to naturalized noncitizens. Conversely, it cannot refrain from denaturalizing someone who, where the government has met its burden to prove that they do not qualify for citizenship. With respect to, as I say, with respect to the merits, the government is, Ms. Yedison is required to show it's her burden that the government lacked diligence and that she suffered from prejudice. As I stated, she was not able to show that here. Her own admission indicates that she was not prejudiced by this, and she's not able to show a lack of diligence here. The government lacked inquiry notice until 2009, which is when it first learned that Ms. Yedison was being, there was a request for her extradition to Bosnia to serve for her, to stand trial for her crimes there. And even so, the delay from 2008 when the government first learned of this until 2018 is reasonable. Supreme Court cases in Cungiz and Costello have held that delays of 20 plus years are, do not indicate a lack of diligence on behalf of the government. Your Honor, unless the court, unless the court has any other questions, we would ask this court to affirm the district court's grant of summary judgment and revocation of Ms. Yedison's citizenship because the admission of Dr. Tom Milanovich's testimony was appropriate. There's no dispute of material fact as to whether Ms. Yedison is eligible to naturalize, and she cannot avoid denaturalization by asserting a laches defense. Okay. It appears we don't have any other questions. Thank you very much. Thank you. Thank you. Turning to the misrepresentation point that my friend on the other side was making, the government is required to show that any misrepresentations that she made were knowingly willful, and they cannot do that here. I would point the court in particular to the statement that she had not knowingly committed a crime. Ms. Yedison has offered testimony that she did not receive instruction regarding... What about where she said she had not served in the military? In that specific question, she previously had disclosed that on a refugee application in her interview with Dr. Woodward, again, on her application for lawful permanent residence, and she has plausibly explained that she misinterpreted the question as asking for an update on that information that she had repeatedly provided, and so we believe that that's enough to create dispute of fact on that point. She had previously disclosed that several times and genuinely believed that that was what was being asked, and the government has not presented evidence to contradict that. On the question of whether that duress is not enough to show the lack of purposeful assistance, we would, again, go back to the question of the extenuating circumstances. Here, she was not making a conscious decision because of the trauma response that she testified about, that she was in shock, that she had been previously attacked by the person who was ordering her to commit this action. And finally, the government argues that her explanations are implausible, but in this case, her explanations are not blatantly contradicted by the record. In fact, they are consistent with the record, and the fact that she cannot come forward with more evidence is because of the delay in bringing this case at this time. We took a deposition of Mr. Woodward, who was present for her interview regarding her military service. He does not even recall his process, let alone her specific answers in that case. And given the key issues of fact in this case regarding Ms. Yedison's mental state in Trusina, what she knew regarding war crimes at the time that she answered her questions and the questions that were asked in her interviews as part of her immigration process, it would be inappropriate for the district court error by drawing credibility determinations against Ms. Yedison, and this court should reverse and remand. Okay. Thank you very much. We thank both counsels for their presentations in this matter. This case is submitted.
judges: THOMAS, ALBA, Rakoff